**BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

|  |  |  |
|---|---|---|
| | ) | |
| | ) | |
| **IN RE DELTA DENTAL** | ) | |
| **ANTITRUST LITIGATION** | ) | MDL No. 2931 |
| | ) | |
| | ) | |

**DEFENDANTS' RESPONSE TO MOTION FOR TRANSFER OF RELATED ACTIONS
TO THE NORTHERN DISTRICT OF ILLINOIS FOR COORDINATED OR
CONSOLIDATED PRETRIAL PROCEEDINGS PURSUANT TO 28 U.S.C. § 1407**

Defendants[1] hereby submit this Response to the Motion to Transfer, Dkt. 1, filed by

plaintiffs in the consolidated cases captioned *In re Delta Dental Antitrust Litig.*, No. 1:19-cv-06734

(N.D. Ill. Nov. 26, 2019) (the "Moving Plaintiffs"). Defendants agree that centralization of the

related actions is appropriate pursuant to 28 U.S.C. § 1407 and that the Northern District of Illinois

is an appropriate venue for consolidated or coordinated pretrial proceedings.

---

[1] "Defendants" are Delta Dental Plans Association; Delta Dental Insurance Company; DeltaUSA; Arizona Dental Insurance Service, Inc. d/b/a Delta Dental of Arizona; Delta Dental Plan of Arkansas, Inc.; Delta Dental of California; Colorado Dental Service Inc. d/b/a Delta Dental of Colorado; Delta Dental of Connecticut Inc.; Delta Dental of Delaware Inc.; Delta Dental of the District of Columbia; Hawaii Dental Service; Delta Dental Plan of Idaho, Inc. d/b/a Delta Dental of Idaho; Delta Dental of Illinois; Delta Dental of Indiana, Inc.; Delta Dental of Iowa; Delta Dental of Kansas Inc.; Delta Dental of Kentucky, Inc.; Maine Dental Service Corporation d/b/a Delta Dental Plan of Maine; Dental Service of Massachusetts, Inc. d/b/a Delta Dental of Massachusetts; Delta Dental Plan of Michigan, Inc.; Delta Dental of Minnesota; Delta Dental of Missouri; Delta Dental of Nebraska; Delta Dental Plan of New Hampshire, Inc.; Delta Dental of New Jersey, Inc.; Delta Dental Plan of New Mexico, Inc.; Delta Dental of New York Inc.; Delta Dental of North Carolina; Delta Dental Plan of Ohio, Inc.; Delta Dental Plan of Oklahoma; Oregon Dental Service d/b/a Delta Dental of Oregon; Delta Dental of Pennsylvania; Delta Dental of Puerto Rico, Inc.; Delta Dental of Rhode Island; Delta Dental of South Dakota; Delta Dental of Tennessee; Delta Dental Plan of Vermont, Inc.; Delta Dental of Virginia; Delta Dental of Washington; Delta Dental Plan of West Virginia, Inc.; Delta Dental of Wisconsin, Inc.; Delta Dental Plan of Wyoming d/b/a Delta Dental of Wyoming; Dentegra Group Inc.; Dentegra Insurance Company; and Renaissance Health Service Corporation.

The Moving Plaintiffs identified 14 actions subject to transfer: the eleven cases consolidated under the *In re Dental Antitrust Litig.* caption in the Northern District of Illinois; *American Dental Ass'n et al. v. Delta Dental Insurance Co. et al.*, No. 1:19-cv-07808 (N.D. Ill.), which has since been consolidated with the other Northern District of Illinois cases; *Obeng v. Delta Dental Plans Ass'n et al.*, No. 1:19-cv-25072 (S.D. Fla.); and *Dickey v. Delta Dental Plans* Ass'n, No. 19-cv-00910 (S.D. Miss.). As of the filing of this Response, at least 9 additional plaintiffs have filed related actions in at least 7 additional district courts. Defendants identified 8 of these new complaints in a Notice of Related Actions filed on January 3, 2020. Dkt. 79. The Panel identified a ninth in a Notice of Related Action on January 8, 2020. Dkt. 95. All of these actions (collectively, the "Related Actions') should be centralized and transferred to the Northern District of Illinois for the reasons stated below.

## BACKGROUND

Delta Dental Plans Association ("DDPA") is a non-profit organization headquartered in Oak Brook, Illinois (a suburb of Chicago). DDPA and its 39 Member Companies offer dental benefits to tens of millions of Americans. Other providers, such as Aetna and MetLife, offer competing insurance products and networks. Dentists who want to be Delta Dental network providers agree to terms and conditions with their local Delta Dental Member Company, which among other things, describe the amounts which will be reimbursed to the provider for any goods and services provided to Delta Dental insureds. The Delta Dental Member Companies compete with other insurers and provide value to their participants by making available to insureds a national network of Delta Dental dentists and by making available to Delta Dental dentists a volume of Delta Dental customers.

Plaintiffs in the Related Actions allege that Defendants have coordinated among each other to suppress competition and reduce the reimbursement rates Member Companies will pay to

providers. The principal basis for this allegation is a purported "market allocation" agreement by which Member Companies agree to divide up the market and not to compete against each other outside their "assigned" territories.

Plaintiffs claim that this conduct has reduced competition and depressed reimbursement rates and is *per se* illegal under the federal antitrust laws, or, in the alternative, that such conduct is illegal under a quick-look or rule-of-reason analysis. These claims are legally and factually baseless, and Defendants will contest them vigorously. The core objective of antitrust law is the prevention of artificial price increases that harm consumers. These lawsuits—which appear to be part of an ongoing campaign by dentists to force Defendants to pay them more money for dental goods and services—are unusual in that the plaintiffs' claims, if successful, would harm consumers by driving up the costs of dental care.

The first Related Action was filed on October 11, 2019 in the Northern District of Illinois. *In re Delta Dental Antitrust Litig.* ("*DDAL*"), No. 1:19-cv-06734 (N.D. Ill.), Dkt. 1. Later that day, another five "virtually identical" (*DDAL*, Dkt. 95 ¶ 2) cases were filed in the Northern District of Illinois.[2] Between October 14 and November 7, five more putative nationwide class actions alleging substantially similar claims were brought in the Northern District of Illinois on behalf of named plaintiff dentists or dental service providers in Arkansas, Florida, Illinois, Texas, California, New Jersey, Michigan, New York, North Carolina, Pennsylvania, and Washington.[3]

---

[2]     *See Benton v. Delta Dental Ins. Co.*, No. 1:19-cv-06739 (N.D. Ill.); *Kaufman & Kaufman Smile Design Studio LLC v. Delta Dental Ins. Co.*, No. 1:19-cv-06743 (N.D. Ill.); *Legacy Dental Assocs., P.C. v. Delta Dental Ins. Co.*, No. 1:19-cv-06744 (N.D. Ill.); *Lindley v. Delta Dental Ins. Co.*, No. 1:19-cv-06747 (N.D. Ill.); *Dultz v. Delta Dental Ins. Co.*, No. 1:19-cv-06758 (N.D. Ill.).

[3]     *See Simon and Simon, PC v. Delta Dental Ins. Co.*, No. 1:19-cv-06776 (N.D. Ill.); *Fisher v. Delta Dental Ins. Co.*, No. 1:19-cv-07090 (N.D. Ill.); *Tooth Town Pediatric Dentistry, PLLC v. Delta Dental Ins. Co.*, No. 1:19-cv-07279 (N.D. Ill.); *Bemus Point Dental, LLC v. Delta Dental Ins. Co.*, No. 1:19-cv-07362 (N.D. Ill.); *Rittenhouse Smiles, P.C. v. Delta Dental Ins. Co.*, No. 1:19-cv-07395 (N.D. Ill.).

Shortly after the initial complaint filings, and in response to plaintiffs' motions in certain of the actions, the Northern District of Illinois Executive Committee reassigned the ten additional pending cases to Judge Elaine E. Bucklo, the judge to whom the first-filed case was assigned. *DDAL*, Dkt. 9 & 25.[4] A twelfth Related Action was filed in the Northern District of Illinois on November 26, 2019 and reassigned to Judge Bucklo on December 17. *Am. Dental Ass'n et al. v. Delta Dental Ins. Co. et al.*, No. 1:19-cv-07808 (N.D. Ill.), Dkt. 18.

At the time of the Motion to Transfer, two Related Actions were pending outside the Northern District of Illinois. *See Obeng v. Delta Dental Plans Ass'n et al.*, No. 1:19-cv-25072 (S.D. Fla.); *Dickey v. Delta Dental Plans Ass'n et al.*, No. 3:19-cv-00910 (S.D. Miss.). Since then, at least 9 additional plaintiffs have filed putative class action complaints in at least 7 additional Districts. *See* Notice of Related Actions, Dkt. 79; Notice of Related Action, Dkt. 95. All of these new complaints are materially identical to one or more complaints already designated as "Related Actions" in Moving Plaintiffs' Motion.

Each of the Related Actions names essentially the same group of Defendants.[5] Each alleges a Section 1 violation based on supposedly unlawful agreements between DDPA and its Member Companies to divide and allocate the market for dental insurance throughout the nation. And each

---

[4]     On November 25, Judge Bucklo issued an Initial Case Management order consolidating the cases under the caption "*In re Delta Dental Antitrust Litigation.*" *DDAL*, Dkt 95.

[5]     There is extensive overlap in the defendants named across the Related Actions. However, not every Defendant is named in each complaint. For example, the *Dickey* and *Obeng* complaints do not name Delta Dental of Connecticut, Inc., while the *Am. Dental Ass'n* and *DDAL* complaints do. Moreover, the *Am. Dental Ass'n* complaint names Renaissance Health Services Corporation while the others do not. That said, "complete identity of the parties is not required for centralization under Section 1407." *In re Processed Egg Prods. Antitrust Litig.*, 588 F. Supp. 2d 1366, 1367 (J.P.M.L. 2008).

is styled as a putative class actions on behalf of substantially overlapping classes of dental service providers.[6]

The complaints in the Related Actions also purport to base their claims on common evidence. For instance, all of the complaints discuss compensation levels of Member Company executives.[7] The complaints cite the same (or substantially similar) statistics on dentists' average net income over the past 15-20 years.[8] And the complaints allege that similar features of the agreements between dentists and Member Companies reflect or support the existence of the supposed antitrust conspiracy.[9]

## ARGUMENT

**I.    The Panel Should Transfer and Consolidate the Related Actions Pursuant to 28 U.S.C. § 1407.**

### A.    The Related Actions Involve Common Questions of Fact and Law.

Defendants agree with the Moving Plaintiffs that the Related Actions share common questions of law and fact. Mem. ISO Mot. to Transfer, Dkt. 1-1 at 7-9. Common questions of fact include but are not limited to:

- The procompetitive effects (and alleged anticompetitive effects) of DDPA's trademark license and other features of the Delta Dental network;

- The decision by dentists to participant in the Delta Dental network and the benefits they enjoy from such participation;

---

[6]    *E.g.*, *Dickey*, Dkt. 1 ¶¶ 135-247 (all Delta Dental providers that provide goods or services to a Delta Dental insured—nationwide (injunction) and Mississippi (damages)); *Am. Dental Ass'n*, Dkt. 1 ¶¶ 152-155 (same—nationwide); *DDAL*, Dkt. 96 ¶¶ 140-141 (all Delta Dental providers reimbursed by a Defendant or subject to a Delta Dental Plan Agreement—nationwide).

[7]    *E.g.*, *Dickey*, Dkt. 1 ¶ 130; *Am. Dental Ass'n*, Dkt. 1 ¶ 142; *DDAL*, Dkt. 96 ¶ 111.

[8]    *E.g.*, *Dickey*, Dkt. 1 ¶ 108; *Am. Dental Ass'n*, Dkt. 1 ¶ 136; *DDAL*, Dkt. 96 ¶ 137.

[9]    *E.g.*, *Dickey*, Dkt. 1 ¶¶ 111-112; *Am. Dental Ass'n*, Dkt. 1 ¶ 124; *DDAL*, Dkt. 96 ¶ 83.

- The history and justifications for trademark licensing decisions by DDPA regarding the Delta Dental mark;

- The extent and impact of non-brand competition by Member Companies in and outside their respective territories; and

- The effect of the alleged conspiracy on reimbursement rates, insurance premiums, and the provision of dental goods and services in the relevant market(s).

Transfer is authorized even when actions involve just "one or more common questions," so these myriad common questions, which lie at the heart of the various Related Actions, easily justify transfer and consolidation under 28 U.S.C. § 1407.

There are differences between the Related Actions, to be sure. For example, the *DDAL* Consolidated Complaint alleges "price fixing" and "revenue restrictions" in addition to the core "market allocation" restriction that is the substantial focus of all of the Related Actions, while the other complaints do not. Nonetheless, these allegations are interrelated, and it is settled that "complete identity of common factual issues" is not a prerequisite to transfer. *In re Auto Body Shop Antitrust Litig.*, 37 F. Supp. 3d 1388, 1390 (J.P.M.L. 2014). As discussed below, the overlap in factual issues, parties, and claims in the Related Actions is extensive enough that coordination of common discovery clearly "will be essential to avoiding duplication and inconvenience to the parties, witnesses, and the courts." *In re Generic Digoxin and Doxycycline Antitrust Litig.*, 222 F. Supp. 1341, 1343 (J.P.M.L. 2017).[10]

---

[10]     By arguing that transfer under 28 U.S.C. § 1407 is appropriate, Defendants do not waive and expressly reserve their right to oppose certification of the putative classes in Related Actions. As this Panel has recognized, "[t]he criteria for a class determination pursuant to Rule 23 of the Federal Rules of Civil Procedure are different from the criteria for transfer pursuant to 28 U.S.C. § 1407." *In re 7-Eleven Franchise Antitrust Litig.*, 358 F. Supp. 286, 287 (J.P.M.L. 1973). The threshold inquiry under Rule 23 generally concerns whether a case presents common and predominating questions *among plaintiffs and class members*, while the inquiry under § 1407(a) is whether common questions arise *across different cases*.

**B.      Transfer Would Be Convenient for the Parties and Witnesses and Would Promote Judicial Efficiency.**

Defendants also agree with the Moving Plaintiffs that transfer will promote the just and efficient resolution of the Related Actions. *See* Mem. ISO Mot. to Transfer, Dkt. 1-1 at 9-10. Because the complaints in the Related Actions allege the same antitrust conspiracy between Defendants, plaintiffs in the Related Actions are certain to seek discovery of the same information on the same or very similar topics. Without pretrial consolidation or coordination, the courts and the parties would spend significant time and resources in repetitive motion practice. The courts and the parties also would also need to re-litigate overlapping pretrial issues, including discovery issues, in various courts and with various counsel all purporting to represent essentially the same putative class of plaintiffs. *See, e.g.*, *In re Allstate Ins. Co. FLSA Litig.*, 283 F. Supp. 2d 1358, 1359 (J.P.M.L. 2003) (ruling that consolidation was "necessary in order to avoid duplication of discovery, prevent inconsistent pretrial rulings and conserve the resources of the parties, their counsel and the judiciary").

Voluntary cooperation or other mechanisms short of transfer, meanwhile, are unlikely to be successful to manage the significant inefficiencies posed by parallel litigation of overlapping facts and claims by essentially the same putative class in multiple venues. Specifically, Defendants attempted to coordinate motion to dismiss briefing among the Related Actions by moving for a stay of the deadline to answer or otherwise respond to the *DDAL* complaint pending this Panel's decision on the transfer motion, but Judge Bucklo denied that motion. *See DDAL*, Dkt. 166. Defendants have also attempted to negotiate agreed stays with the plaintiffs outside the Northern District of Illinois so as to avoid duplication of effort and costly motion practice, but many of the non-*DDAL* plaintiffs have confirmed that they are unwilling to consent to a stay as they do not believe that their interests, or their claims, are being adequately represented in the *DDAL* actions

7

and thus are pressing forward with their suits, and clearly jockeying for lead counsel positions in doing so. As a result, Defendants anticipate having to secure local counsel in the various jurisdictions and shortly move to stay at least 8 of the non-Illinois actions lest they be required to file motions to dismiss similar (though not identical) complaints in multiple jurisdictions under the law of multiple circuits.

Given the lack of success in these initial efforts, Defendants have no belief that voluntary cooperation will be a feasible alternative to centralization, especially given the number of actions and districts already involved in this action. *See In re General Tire & Rubber Co. Securities Litigation*, 429 F. Supp. 1032, 1034 (J.P.M.L. 1977) ("Though voluntary cooperation among the parties as a means of avoiding duplicative discovery is commendable, placing these actions under the control of a single judge will ensure that duplicative discovery on the complex factual questions will be prevented and have the salutary effect of eliminating the possibility of conflicting pretrial rulings."). Moreover, Plaintiffs in the Related Cases are represented by multiple different law firms, which "makes voluntary cooperation among counsel in the different districts a less workable alternative" than in other circumstances. *In re Discovery Card Payment Protection Plan Mktg. & Sales Prac. Litig.*, 764 F. Supp. 2d 1341, 1343 (J.P.M.L. 2011).

Finally, the fact that some cases have been centralized before Judge Bucklo in the Northern District of Illinois does not reduce the need for centralization under Section 1407, since there are already actions pending in at least 9 other district courts and 5 other circuits purporting to represent overlapping classes with similar, although not always identical, claims. *See In re Gas Vent Pipe Antitrust Litig.*, 380 F. Supp. 799, 800 (J.P.M.L. 1974) (ordering transfer notwithstanding prior intracircuit consolidation before a single district judge because of "the possibility that additional actions with similar allegations might be filed in jurisdictions not encompassed within the Ninth

8

Circuit"). And that number is likely to grow in the future. For similar reasons, transfer under 28 U.S.C. § 1404 is not a feasible alternative. *See In re Oxycontin Antitrust Litig.*, 314 F. Supp. 2d 1388, 1390 (J.P.M.L. 2004) (finding transfer warranted under § 1407 rather than § 1404 because "the number of related actions continues to grow" and there is a "potential need for additional motions to transfer venue").

**II.    The Related Actions Should Be Transferred to and Consolidated in the Northern District of Illinois.**

Defendants agree that the Northern District of Illinois is the most convenient forum for the parties and the witnesses. The Northern District of Illinois is geographically central and easily accessible to counsel and witnesses. DDPA and DeltaUSA are headquartered in Oak Brook, Illinois and Delta Dental of Illinois is headquartered in Naperville, Illinois, which are approximately 15 and 30 miles west of Chicago, respectively. Individuals located at DDPA's corporate headquarters, in particular, are likely to be key witnesses for discovery purposes and in any trial on the merits. Counsel for many of the parties (including DDPA, a significant number of Member Companies, and the majority of the *DDAL* plaintiffs) are also located in Chicago or in a nearby metropolitan area.

In contrast to the Northern District of Illinois, the other forums in which Related Actions are pending would be inconvenient for the vast majority of Defendants. Only one or two Related Actions are currently pending in each of those districts, moreover, so transfer of all of the Related Actions to one of those districts would be inconvenient for the majority of plaintiffs other than the particular plaintiff or plaintiffs that sued in that forum.

This Panel has frequently noted that the Northern District of Illinois is a "central, readily accessible venue for all parties," particularly where a primary defendant "is headquartered in the district" and "relevant documents and witnesses thus will be found there." *In re Dealer Mgmt. Sys.*

*Antitrust Litig.*, 291 F. Supp. 3d 1367, 1369 (J.P.M.L. 2018). For this reason, the Panel has historically transferred and consolidated numerous cases before the Northern District of Illinois where, as here, an action was already pending there. *E.g. id.*; *In re AIG Workers Comp. Ins. Policyholder Litig.*, 11 F. Supp. 3d 1349, 1350 (J.P.M.L. 2014); *In re Ocean Fed. Bank FSB Mortg. Servicing Litig.*, 314 F. Supp. 2d 1376, 1379 (J.P.M.L. 2004); *In re Aimster Copyright Litig.*, 177 F. Supp. 2d 1380, 1382 (J.P.M.L. 2001); *Starlink Corn Prods. Liab. Litig.*, 152 F. Supp. 2d 1378, 1380-81 (J.P.M.L. 2001). As of September 30, 2019, moreover, the Northern District has only 9 MDLs pending. That is significantly fewer than previous years, so the court is well-suited to accept another MDL at this time.[11]

Defendants therefore request that the Panel promptly order the cases transferred to the Northern District of Illinois.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Panel transfer the Related Actions to the Northern District of Illinois for consolidated or coordinated pretrial proceedings under 28 U.S.C. § 1407.

---

[11] For the FY 2019 statistics, see https://www.jpml.uscourts.gov/sites/jpml/files/JPML_ Statistical_Analysis_of_Multidistrict_Litigation-FY-2019.pdf. By contrast, there were 13 MDLs pending in the Northern District of Illinois as of FY 2016. *See* https://www.jpml.uscourts.gov/ sites/jpml/files/JPML_Statistical_Analysis_of_Multidistrict_Litigation-FY-2016_1.pdf.

Dated:  January 10, 2020

/s/ *Kathy L. Osborn*
Kathy L. Osborn
Ryan M. Hurley
Anna Marie Behrmann
FAEGRE BAKER DANIELS LLP
300 N. Meridian St., Suite 2500
Indianapolis, IN 46204
(317) 237-8261
kathy.osborn@faegrebd.com
ryan.hurley@faegrebd.com
anna.behrmann@faegrebd.com

Colby Anne Kingsbury
FAEGRE BAKER DANIELS LLP
311 S. Wacker Dr., #4400
Chicago, IL 60606
(312) 212-6573
colby.kingsbury@FaegreBD.com

Jeffrey S. Roberts
Joshua P. Mahoney
FAEGRE BAKER DANIELS LLP
1144 15th Street, Suite 3400
Denver, CO 80203
(303) 607-3500
jeff.roberts@faegrebd.com
joshua.mahoney@faegrebd.com

*Counsel for Defendants Delta Plan of Arkansas, Inc., Delta Dental of Indiana, Inc., Delta Dental of Kentucky, Inc., Delta Dental Plan of Michigan, Inc., Delta Dental Plan of New Mexico, Inc., Delta Dental of North Carolina, Delta Dental Plan of Ohio, Inc., Delta Dental of Tennessee, and Renaissance Health Service Corporation*

Respectfully submitted,

/s/ *Britt M. Miller*
Britt M. Miller
Daniel K. Storino
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
(312) 782-0600
bmiller@mayerbrown.com
dstorino@mayerbrown.com

Mark W. Ryan
MAYER BROWN LLP
1999 K Street NW
Washington, DC 20006
(202) 263-3000
mryan@mayerbrown.com

*Counsel for Defendants Delta Dental Plans Association, DeltaUSA, Delta Dental of Connecticut Inc., Delta Dental Plan of Idaho, Inc. d/b/a Delta Dental of Idaho, Delta Dental of Iowa, Dental Service of Massachusetts, Inc. d/b/a Delta Dental of Massachusetts, Delta Dental of Missouri, Delta Dental of New Jersey, Inc., Delta Dental Plan of Oklahoma, Oregon Dental Service d/b/a Delta Dental of Oregon, Delta Dental of South Dakota, Delta Dental of Washington, and Delta Dental Plan of Wyoming d/b/a Delta Dental of Wyoming*

11

/s/ *Benjamin W. Hulse*
Jerry W. Blackwell
Benjamin W. Hulse
Gerardo Alcazar
BLACKWELL BURKE P.A.
431 South Seventh Street
Suite 2500
Minneapolis, MN 55415
612-343-3200
blackwell@blackwellburke.com
bhulse@blackwellburke.com
galcazar@blackwellburke.com

Lori Swanson
Mike Hatch
SWANSON HATCH, P.A.
431 South 7th Street
Suite 2545
Minneapolis, MN 55415
612-315-3037
lswanson@swansonhatch.com
mhatch@swansonhatch.com

*Counsel for Defendants Delta Dental of*
*Minnesota and Delta Dental of Nebraska*

/s/ *David E. Dahlquist*
David E. Dahlquist
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, IL 60601-9703
312-558-5600
ddahlquist@winston.com

*Counsel for Defendants Arizona Dental Insurance*
*Service, Inc. d/b/a Delta Dental of Arizona,*
*Hawaii Dental Service, Delta Dental of Kansas*
*Inc., Maine Dental Service Corporation d/b/a*
*Delta Dental Plan of Maine, Delta Dental Plan of*
*New Hampshire, Inc., Delta Dental of Rhode*
*Island, and Delta Dental Plan of Vermont, Inc.*

/s/ *Scott D. Stein*
Scott D. Stein
Colleen M. Kenney
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
(312) 853-7000
sstein@sidley.com
ckenney@sidley.com

*Counsel for Defendants Colorado Dental*
*Service, Inc. d/b/a Delta Dental of*
*Colorado, Delta Dental of Illinois, and*
*Delta Dental of Virginia*

/s/ *Allison W. Reimann*
Kevin J. O'Connor
Allison W. Reimann
GODFREY & KAHN, S.C.
One East Main Street
Suite 500
Madison, WI 53703
608-257-3911
koconnor@gklaw.com
areimann@gklaw.com

*Counsel for Defendants Delta Dental of*
*Wisconsin, Inc.*

/s/ *Howard Ullman*
Stephen V. Bomse
Russell P. Cohen
Howard Ullman
ORRICK HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105
415-773-5700
sbomse@orrick.com
rcohen@orrick.com
hullman@orrick.com

Emily Luken
ORRICK HERRINGTON & SUTCLIFFE LLP
Columbia Center
1152 15th Street, N.W.

12

13

Washington, D.C. 20005
202-339-8400
eluken@orrick.com

*Counsel for Defendants Delta Dental
Insurance Company, Delta Dental of
California, Delta Dental of Delaware Inc.,
Delta Dental of the District of Columbia,
Delta Dental of New York Inc., Delta Dental
of Pennsylvania, Delta Dental of Puerto
Rico, Inc., Delta Dental Plan of West
Virginia, Inc., Dentegra Group, Inc., and
Dentegra Insurance Company*