**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

| | | |
|---|---|---|
| **IN RE: DELTA DENTAL** | ) | **MDL No. 2931** |
| **ANTITRUST LITIGATION** | ) | |

This document relates to the following case only:

*Justin Ben Zvi, DDS, Alina Lukashevsky, DDS, and Adam Merriam, DDS, individually and on behalf of all others similarly situated,* **Plaintiffs**

*v.*

*Delta Dental of New York Inc.,* **Defendant**,

(S.D. New York, No. 20-cv-05628)

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION TO VACATE CONDITIONAL TRANSFER ORDER 3 (CTO-3)**

# **TABLE OF CONTENTS**

I. BACKGROUND.......................................................................................................... 1

    A.   Plaintiffs' Action On Behalf Of New York Dentists....................................... 1

    B.  CTO-3 Is Filed In The MDL ........................................................................ 2

    C.  The MDL Complaints Do Not Connect DDNY To Illinois............................. 2

II. LEGAL STANDARDS ............................................................................................. 3

III. ARGUMENT ........................................................................................................... 4

    A.   *Bristol-Myers* Prohibits Northern District Of Illinois Exercising Jurisdiction............. 4

    B.  Claims Cannot Transfer To An MDL Court Lacking Personal Jurisdiction................ 7

    C.  No Theory Of Jurisdiction Allows Transfer To Northern Districct Of Illinois............ 8

V.  CONCLUSION......................................................................................................... 9

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Bilek v. Fed. Ins. Co.*,
  No. 19-cv-8389, 2020 U.S. Dist. LEXIS 122338
  (N.D. Ill. July 13, 2020) ................................................................................ 5, 6

*Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*,
  137 S. Ct. 1773 (2017) ................................................................................ passim

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985) ........................................................................................ 5

*Doe v. Cotterman*,
  No. 17-cv-58, 2018 U.S. Dist. LEXIS 38794
  (N.D. Ill. Mar. 9, 2018) ................................................................................ 8, 9

*Felland v. Clifton*,
  682 F.3d 665 (7th Cir. 2012) ............................................................................ 6

*Hyatt Int'l Corp. v. Coco*,
  203 F.3d 707 (7th Cir. 2003) ............................................................................ 6

*In re Delta Dental Antitrust Litig.*,
  433 F. Supp. 3d 1358 (J.P.M.L. 2020) .......................................................... 2, 6

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*,
  MDL No. 2046, 2011 U.S. Dist. LEXIS 34953
  (S.D. Tex. Mar. 31, 2011) ................................................................................ 7

*In re Nat'l Hockey League Players' Concussion Injury Litig.*,
  MDL No. 14-2551, 2019 U.S. Dist. LEXIS 175979
  (D. Minn. Oct. 10, 2019) ................................................................................ 7

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
  511 U.S. 375 (1994) ........................................................................................ 4

*Kromrey v. U.S. Dep't of Justice*,
  423 F. App'x 624 (7th Cir. 2011) ..................................................................... 3

*LDGP, LLC v. Cynosure, Inc.*,

  No. 15-cv-50148, 2018 U.S. Dist. LEXIS 6481

  (N.D. Ill. Jan. 16, 2018) ...................................................................................................... 3

*Mackey v. IDT Energy, Inc.*,

  432 F. Supp. 3d 783 (N.D. Ill. 2020) ................................................................................. 4

*Mensah-Yawson v. Raden*,

  170 F. Supp. 3d 222 (D.D.C. 2016) .................................................................................... 4

*Mussat v. IQVIA, Inc.*,

  953 F.3d 441 (7th Cir. 2020) ........................................................................................... 5, 7

*Owen Equip. & Erection Co. v. Kroger*,

  437 U.S. 365 (1978) ........................................................................................................... 3

*Ruhgras AG v. Marathon Oil Co.*,

  526 U.S. 574 (1999) ........................................................................................................... 4

*Sloane v. Gen. Motors LLC*,

  287 F. Supp. 3d 840 (N.D. Cal. 2018) ............................................................................... 8

*Steel Co. v. Citizens for a Better Env't*,

  523 U.S. 83 (1998) ............................................................................................................. 3

**Statutes**

15 U.S.C. § 1 ............................................................................................................................. 2

15 U.S.C. § 3 ............................................................................................................................. 2

735 Ill. Comp. Stat. 5/2-209 ...................................................................................................... 5

N.Y. Gen. Bus. Law § 340 ......................................................................................................... 2

**Rules**

JPML Rule 7.1(f) ....................................................................................................................... 1

**Other Authorities**

Andrew Bradt,

   *The Long Arm of Multidistrict Litigation*,

   59 Wm. & Mary L. Rev. 1165 (2018) ........................................................................ 7

Louis J. Capozzi III,

   *Relationship Problems: Pendent Personal Jurisdiction After* Bristol-Myers Squibb,

   11 Drexel Law Rev. 215 (2018) ................................................................................ 9

Scott Dodson,

   *Plaintiff Personal Jurisdiction and Venue Transfer*,

   117 Mich. L. Rev. 1463 (2019) ................................................................................. 7

Plaintiffs Justin Ben Zvi, DDS, Alina Lukashevsky, DDS, and Adam Merriam, DDS, individually and on behalf of the class of all others similarly situated (the "Class") (together, "Plaintiffs"), respectfully submit this memorandum of law pursuant to Rule 7.1(f) of the Rules of Procedure for the Judicial Panel on Multidistrict Litigation ("JPML" or "Panel"), in support of Plaintiffs' motion to vacate Conditional Transfer Order 3 ("CTO-3").[1]

CTO-3 must be vacated because it would unconstitutionally transfer to the U.S. District Court for the Northern District of Illinois an action over which that court lacks jurisdiction. Plaintiffs are New York-based dentists who claim that a New York-based company, Defendant Delta Dental of New York Inc. ("DDNY"), subjected them to anticompetitive practices within New York. No court located in Illinois may exercise personal jurisdiction over such claims. *See Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 137 S. Ct. 1773, 1781 (2017) ("*Bristol-Myers*") (personal jurisdiction lacking in California-based court where "nonresident[ plaintiffs] were not prescribed Plavix in California, did not purchase Plavix in California, did not ingest Plavix in California, and were not injured by Plavix in California").

I.      **BACKGROUND**

A.  **Plaintiffs' Action On Behalf Of New York Dentists**

Plaintiffs initiated their action on July 21, 2020 in the Southern District of New York, on behalf of a New York statewide class of dentists, alleging that DDNY was part of a scheme to allocate territories of operation within the United States and its territories. DDNY was allocated the territory comprised of the State of New York. Plaintiffs asserted violations of New York

---

[1] CTO-3 appears at Dkt. No. 178 in Case MDL No. 2931. Plaintiffs' notice of opposition to CTO-3 appears at Dkt. No. 180 in Case MDL No. 2931.

State's Donnelly Act (New York General Business Law § 340 et seq), as well as Sections 1 and 3 of the Sherman Act (15 U.S.C. §§ 1, 3).  Compl. ¶ 1–2.[2]

Plaintiffs' complaint does not plead facts sufficient to confer jurisdiction in the Northern District of Illinois.  Plaintiffs—all New York dentists with practices located in New York City— noted that DDNY is located in Manhattan and registered with the New York State Department of State's Division of Corporations under DOS ID # 109756.  Personal jurisdiction in the Southern District of New York is premised on DDNY's business connections with dentists throughout New York State, including New York County, where the Southern District of New York is located.  *Id.* ¶¶ 26, 71–76.

### B.  CTO-3 Is Filed In The MDL

On July 28, 2020, the Panel issued CTO-3, which if upheld would transfer Plaintiffs' action to the Northern District of Illinois as part of Multidistrict Litigation No. 2931 (the "MDL").  The MDL, created by this panel's Order of March 27, 2020, encompasses various actions against Delta Dental Plans Association ("DDPA") and other corporations.  *See In re Delta Dental Antitrust Litig.*, 433 F. Supp. 3d 1358, 1358–59 (J.P.M.L. 2020).  In designating the Northern District of Illinois as the transferee court, the Panel stressed that DDPA is located within that district.  *See id.* at 1359.

### C.  The MDL Complaints Do Not Connect DDNY To Illinois

Simply put, none of the complaints currently within the MDL allege any specific facts connecting DDNY to Illinois. While the MDL complaints name as defendants a long list of entities nationwide that do business under some iteration of the "Delta Dental" brand (for example, Delta

---

[2] References herein to "Compl. __" are to paragraphs of Plaintiffs' Class Action Complaint, which appears at Dkt. No. 177-3 in Case MDL No. 2931.

Dental of Illinois), DDNY is only nominally listed as a defendant.  For example, the earliest-filed complaint in the MDL asserts that DDNY is located in Pennsylvania.  *See* Compl. ¶ 42, *Dolgow et al. v. Delta Dental Ins. Co. et al.*, No. 19-cv-6734 (N.D. Ill. Oct. 11, 2019) (ECF No. 1) ("*Dolgow* Compl.").  A subsequent complaint in the MDL provides another location for DDNY, asserting without explanation that DDNY shares DDPA's address in suburban Chicago.  *See* Am. Compl. ¶¶ 27, 53, *Am. Dental Assoc. et al. v. Delta Dental Plans Assoc. et al.*, No. 19-cv-7808 (N.D. Ill. Mar. 27, 2020) (ECF No. 25) ("*ADA* Compl.").  Further, complaints in the MDL failed to allege any facts demonstrating that DDNY had done business in Illinois, or had any contacts with Illinois at all.  Instead, toshe complaints focus generally on connections between Illinois-based co-defendants DDPA and Delta Dental Illinois.  *See Dolgow* Compl. ¶¶ 63–64; *ADA* Compl. ¶¶ 73–74.

## II.    LEGAL STANDARDS

The constitutional limitation on federal personal jurisdiction make federal courts "courts of limited jurisdiction."  *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978); *e.g.*, *LDGP, LLC v. Cynosure, Inc.*, No. 15-cv-50148, 2018 U.S. Dist. LEXIS 6481, at *4 (N.D. Ill. Jan. 16, 2018).  A federal court must determine that it has jurisdiction first, before issuing orders affecting an action, and this determination must be made based on specific factual allegations demonstrating jurisdiction.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93–102 (1998) (rejecting doctrine of "hypothetical jurisdiction" that would allow a court to rule on an issue of law before adjudicating jurisdiction); *accord, e.g.*, *Kromrey v. U.S. Dep't of Justice*, 423 F. App'x 624, 626 (7th Cir. 2011) (federal courts "must ensure" presence of personal jurisdiction before proceeding with litigation).

"It is presumed that a cause lies outside [of federal courts'] limited jurisdiction and the burden of establishing the contrary resting upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see, e.g.*, *Mensah-Yawson v. Raden*, 170 F. Supp. 3d 222, 232 (D.D.C. 2016) (dismissing claims for lack of personal jurisdiction). All courts have an independent obligation to determine personal jurisdiction exists, even absent challenge from any party. *Ruhgras AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999) (emphasizing necessity of courts' scrutinizing personal jurisdiction as threshold determination).

A procedural tool created by statute like the MDL cannot override the Constitution's requirement that personal jurisdiction be demonstrated by every court, in every case, and over every party. Thus, a case cannot be aggregated before a court in a forum without connection to specific claims and parties at issue. *See Bristol-Myers*, 137 S. Ct. at 1781 (aggregation of certain cases within multi-case process failed, where "[w]hat is needed—and what is missing here—is a connection between the forum and the specific claims at issue").

## III.    ARGUMENT

### A.    *Bristol Myers* Prohibits Northern District Of Illinois Exercising Jurisdiction

The Supreme Court's 2017 decision in *Bristol-Myers* precludes exercise of personal jurisdiction by a court located in a state in which neither the plaintiffs nor defendant are located, and which lacks a meaningful link to the events underlying the plaintiffs' claims. *Bristol-Myers*, 137 S. Ct. at 1781 ("For specific [personal] jurisdiction, a defendant's general connections with the forum are not enough."); *cf.*, *Mackey v. IDT Energy, Inc.*, 432 F. Supp. 3d 783, 785 (N.D. Ill. 2020) (Bucklo, J.) ("I share the view expressed by my colleagues in [recent, post-*Bristol-Myers*] cases and conclude that the general principle articulated in *Bristol-Myers*—that due process requires a 'connection between the forum and the specific claims at issue,' 137 S. Ct. at 1781—

4

prevents me from exercising specific personal jurisdiction over [an out-of-state defendant] with respect to [an out-of-state plaintiff's claims under federal statute].").

Here, there is no constitutional justification for the Northern District of Illinois to exercise personal jurisdiction over Plaintiffs' claims, as none of the Plaintiffs or the members of the Class have connections to Illinois related to the underlying events.  Compl. ¶¶ 21–24 (all Plaintiffs and Class members are New York dentists); *see Bilek v. Fed. Ins. Co.*, No. 19-cv-8389, 2020 U.S. Dist. LEXIS 122338, at *6–9 (N.D. Ill. July 13, 2020) (citing *Mussat v. IQVIA, Inc.*, 953 F.3d 441, 447 (7th Cir. 2020)) (treating class plaintiff's residency in state as prerequisite to asserting personal jurisdiction over out-of-state defendant).

Similarly, there is no basis for the Northern District of Illinois to exercise personal jurisdiction over DDNY.  *Bilek*, 2020 U.S. Dist. LEXIS 122338, at *6 ("A federal court siting in Illinois may exercise jurisdiction over a defendant [sued under a federal statute] only if authorized to do so by both Illinois law and the United States Constitution.").  Under both state and federal law, "a defendant must have purposely established [meaningful] contacts [in the state] such that it could 'reasonably anticipate being haled into court' there."  *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)) (also citing 735 Ill. Comp. Stat. 5/2-209 (Illinois long-arm statute)).

None of the plaintiffs in any of the MDL actions has pleaded that DDNY has purposefully established meaningful contacts with Illinois.  There are no facts that would demonstrate that DDNY has "constant and pervasive" contacts with Illinois sufficient to trigger "general" personal jurisdiction.  Nor are there any facts demonstrating the Northern District of Illinois may exercise "specific" personal jurisdiction, which requires that "the defendant[] purposefully availed [it]self of the privilege of conducting business in the forum state or purposefully directed [its] activities

5

at the state[, and] the alleged injury must have arisen from the defendant's forum-related activities . . . ." *Felland v. Clifton*, 682 F.3d 665, 673 (7th Cir. 2012). Indeed as a market-allocation action, this case is about, *inter alia*, Defendant <u>not</u> doing business in Illinois.

Plaintiffs clearly assert that the injuries to themselves and their fellow New York dentists were caused by the actions within New York of New York-based DDNY, the lone defendant. Compl. ¶¶ 2, 21–25. While alleging that DDNY conspired with Illinois-based DDPA as part of the market-allocation scheme, Plaintiffs do not allege DDNY conducted business activities <u>within Illinois</u>, let alone business activities in Illinois that somehow injured New York dentists. Plainly put, DDNY perpetrated its scheme against New Yorkers in New York. *Id.* DDNY's contacts with Illinois (if any) in furtherance of the scheme are simply too "fortuitous" to justify personal jurisdiction's being exercised by the Northern District of Illinois. *Hyatt Int'l Corp. v. Coco*, 203 F.3d 707, 715–16 (7th Cir. 2003); *accord Bilek*, 2020 U.S. Dist. LEXIS 122338, at *7.

Some of the litigants within the MDL have cited DDPA's location in suburban Chicago, coupled with its purportedly centralized role in the activities of all "Delta Dental"-branded entities throughout the country, as justifying the selection of the Northern District of Illinois as the MDL transferee court. *See In re Delta Dental Antitrust Litig.*, 433 F. Supp. at 1359. However, these bare facts do not support the Northern District of Illinois's exercising specific jurisdiction over DDNY here, as no one has pleaded that DDNY "contracted with" DDPA or any Illinois entity to subject New York dentists to anticompetitive practices "or otherwise instructed" an Illinois entity "to target" dentists in New York. *Bilek*, 2020 U.S. Dist. LEXIS 122338, at *8 (rejecting specific jurisdiction on analogous facts); *see Bristol-Myers*, 137 S. Ct. at 1782 (a court within a state may not authorize specific jurisdiction based solely on out-of-state defendant's "relationship . . . with a third-party" in the state (case quotation omitted)).

**B. Claims Cannot Transfer To An MDL Court Lacking Personal Jurisdiction**

The court overseeing a multidistrict litigation cannot accept a case if it cannot exercise personal jurisdiction over a named defendant not located where the court sits. *See, e.g.*, *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, MDL No. 2046, 2011 U.S. Dist. LEXIS 34953, at \*19–52 (S.D. Tex. Mar. 31, 2011) (MDL court finds no general or specific jurisdiction over case against defendant with no ties to state in which the court sits); *In re Nat'l Hockey League Players' Concussion Injury Litig.*, MDL No. 14-2551, 2019 U.S. Dist. LEXIS 175979, at \*6–16 (D. Minn. Oct. 10, 2019) (same).[3]

Here, the Northern District of Illinois lacks personal jurisdiction over Plaintiffs and DDNY as a matter of constitutional law.[4] *See* Part III.A, *supra*. That Plaintiffs' action has been transferred to the Northern District of Illinois by this Panel does not cure this—an MDL court must confirm independently personal jurisdiction over each case coming into the MDL. *E.g.*, *In re Nat'l Hockey League Players' Concussion Injury Litig.*, 2019 U.S. Dist. LEXIS 175979, at \*6–16. Following *Bristol-Myers*, an MDL court should proceed with caution in assessing personal jurisdiction over each incoming case. *Cf. Mussat*, 953 F.3d at 446 (analogizing federal multidistrict litigation to

---

[3] Legal pundits have observed that *Bristol-Myers* undercuts an MDL's ability to centralize actions in a single forum without specific facts demonstrating jurisdiction over all parties and claims in that forum. *See* Andrew Bradt, *The Long Arm of Multidistrict Litigation*, 59 Wm. & Mary L. Rev. 1165, 1225 (2018) (stressing that, in years following *Bristol-Myers*, "MDL[ will lack the] ability to avoid serious scrutiny" as to "why it does not run afoul of the" Constitution's limits on personal jurisdiction).

[4] The personal jurisdiction protections for Plaintiffs must also be respected when contemplating a transfer from the forum that Plaintiffs' selected. *See* Scott Dodson, *Plaintiff Personal Jurisdiction and Venue Transfer*, 117 Mich. L. Rev. 1463, 1466–67 (2019) ("[P]ersonal-jurisdiction protections for the plaintiff [must] impose limits on [those] transfers" in which "the plaintiff is subjected, against their will, to the adjudicatory authority of a new court whose jurisdiction the plaintiff did <u>not</u> invoke." (emphasis original)).

7

California's system of multi-case consolidation which led to the unconstitutional exercise of personal jurisdiction in *Bristol-Myers*).

### C. No Theory Of Jurisdiction Allows Transfer To Northern District Of Illinois

There is no theory of personal jurisdiction that would permit CTO-3 to place Plaintiffs' action in a state with no meaningful connection to the plaintiffs or the defendants in regard to the underlying events. Following *Bristol-Myers*, some courts have attempted to invoke a "pendent" personal jurisdiction that, they assert, allows the "piggybacking" of other claims on top of an "anchor" claim already giving the court personal jurisdiction over the defendant. Such "piggybacking" is an unconstitutional overreach. And, even when courts do allow pendent personal jurisdiction,[5] it is only in one of two situations. First, where there is unquestionably personal jurisdiction over the defendant for the purposes of federal claims, pendent jurisdiction might be exercised over counterpart state-law claims concerning the same acts. *See, e.g.*, *Doe v. Cotterman*, No. 17-cv-58, 2018 U.S. Dist. LEXIS 38794, at *15–17 (N.D. Ill. Mar. 9, 2018). Second, where a court possesses personal jurisdiction over the defendant for the purposes of claims by a plaintiff resident <u>in the forum state</u>, pendent jurisdiction might be exercised over identical claims against that defendant by out-of-state plaintiffs. *See, e.g.*, *Sloane v. Gen. Motors LLC*, 287 F. Supp. 3d 840, 858–61 (N.D. Cal. 2018).

Here, pendent personal jurisdiction cannot resolve the Northern District of Illinois's lack of personal jurisdiction. There is no basis for the Northern District of Illinois to exercise personal jurisdiction over <u>any</u> of Plaintiffs' claims against DDNY, given the lack of meaningful contacts

---

[5] Pendent personal jurisdiction has never been universally accepted, and debate over its propriety has intensified post-*Bristol-Myers*. *See* Louis J. Capozzi III, *Relationship Problems: Pendent Personal Jurisdiction After* Bristol-Myers Squibb, 11 Drexel Law Rev. 215, 222–39 (2018) (analyzing this debate).

with Illinois. *See* Part I.A & -.C, *supra*. Without any "anchor claim" against DDNY properly before the Northern District of Illinois, that court cannot exercise pendent jurisdiction over Plaintiffs' case against DDNY. *E.g.*, *Cotterman*, 2018 U.S. Dist. LEXIS 38794, at \*15–17 (describing the limits of pendent jurisdiction).

Moreover, any connection that DDNY might have to Illinois-based DDPA, *see* Part III.A, *supra*, is irrelevant for purposes of pendent jurisdiction. The "piggybacking" allowed by pendent jurisdiction is based on "anchor claims," not "anchor defendants." Thus, the Northern District of Illinois could not exercise pendent jurisdiction over DDNY even if it could demonstrate jurisdiction over DDPA. No authority permits pendent jurisdiction to be used to encompass additional defendants. *See* Louis J. Capozzi III, *Relationship Problems: Pendent Personal Jurisdiction After* Bristol-Myers Squibb, 11 Drexel Law Rev. 215, 217–40 (2018) (describing pendent jurisdiction's contextual scope as limited to potential proliferation of claims, not of defendants).

## IV.    CONCLUSION

For the reasons set forth above, Plaintiffs' motion to vacate CTO-3 should be granted..

Dated:    New York, New York
          August 18, 2020

                                        Respectfully submitted,

                                        **FRANK LLP**

                                        By:    _/s/ Gregory A. Frank_
                                        Gregory A. Frank (N.Y.: GF0531)
                                        Marvin L. Frank (N.Y.: MF1436)
                                        Asher Hawkins (N.Y.: AH2333)
                                        370 Lexington Ave., Suite 1706
                                        New York, New York 10017
                                        Tel: (212) 682-1853
                                        Fax: (212) 682-1892
                                        gfrank@frankllp.com
                                        mfrank@frankllp.com
                                        ahawkins@frankllp.com

                                        *Attorneys for* Ben Zvi *Plaintiffs*

10